**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
Ryan D. Ardi (SBN 348738)
*rardi@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN SPIRO, LEAH SPIRO, and STEPHANIE REBECCA ANDRECS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EVERLYWELL, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)<br>3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)<br>4. VIOLATION OF CALIFORNIA MEDICAL INFORMATION PRIVACY ACT (CAL. CIV. CODE §§ 56, *ET SEQ.*)<br>5. BREACH OF WARRANTY<br>6. UNJUST ENRICHMENT<br>7. FRAUD, DECEIT, AND/OR MISREPRESENTATION<br>8. NEGLIGENT MISREPRESENTATION<br><br>**JURY TRIAL DEMANDED** |

**TABLE OF CONTENTS**

**Page No.**

COMPLAINT ..................................................................................... 1

INTRODUCTION ............................................................................... 1

PARTIES ............................................................................................ 4

JURISDICTION AND VENUE ......................................................... 7

FACTUAL ALLEGATIONS .............................................................. 7

    A.    Overview of "Food Sensitivity" ........................................ 7

    B.    Defendant's False and Misleading Product Representations ................. 9

    C.    In Addition to its False and Misleading Product Claims, Defendant Also Profits from the Collection and Use of Consumers' Personal Data ....... 20

    D.    Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representations into Buying the Product, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Product ........................................... 27

    E.    The Products are Substantially Similar .............................. 32

    F.    No Adequate Remedy at Law ......................................... 33

CLASS ACTION ALLEGATIONS ................................................. 36

CAUSES OF ACTION ...................................................................... 40

COUNT ONE ..................................................................................... 40

          "Unfair" Prong ............................................................... 43

          "Fraudulent" Prong ........................................................ 45

          "Unlawful" Prong .......................................................... 45

COUNT TWO .................................................................................... 47

COUNT THREE ............................................................................... 48

COUNT FOUR .................................................................................. 51

COUNT FIVE .................................................................................... 53

COUNT SIX ...................................................................................... 54

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

COUNT SEVEN ................................................................................. 55

COUNT EIGHT .................................................................................. 57

PRAYER FOR RELIEF ....................................................................... 58

DEMAND FOR JURY TRIAL ............................................................. 59

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

-ii-

CLASS ACTION COMPLAINT

**COMPLAINT**

1.    Plaintiffs Benjamin Spiro, Leah Spiro, and Stephanie Rebecca Andrecs ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action complaint against Defendant Everlywell, Inc. ("Defendant"). Plaintiffs' allegations are based upon personal knowledge, and upon information and belief as to all other matters predicated upon the investigation conducted by and through Plaintiffs' attorneys.

**INTRODUCTION**

2.    At a time when personal health and wellness have taken center stage, products promising to unravel food sensitivities have become crucial for consumers who want to understand and manage their dietary health. Yet companies like Defendant misrepresent the capabilities of these products to boost their profits and obtain an unfair advantage over lawful competitors. Defendant deceptively labels and advertises its Immunoglobulin G (IgG) Food Sensitivity Test and its IgG Food Sensitivity Comprehensive Test (collectively, the "Product"), promising consumers that it can identify food sensitivities by measuring IgG antibody levels. But the Product cannot deliver this benefit because IgG antibodies *cannot* detect food sensitivities and simply act as a marker for food consumption.[1] Through its deceptive practices, Defendant misleads consumers into chasing false positives, making unnecessary dietary alterations, and paying a premium for a Product that does not work. In addition, consumers unknowingly surrender their personal information to Defendant under the guise of procuring valuable health insights, thereby raising significant privacy concerns and potential for misuse of this sensitive data.

3.    Defendant claims that its Product is a "Physician reviewed" and CLIA-certified (Clinical Laboratory Improvement Amendments) test that measures IgG antibody levels to identify food sensitivities. Defendant advertises that its IgG Food

---

[1] *The Myth of IgG Food Panel Testing*, AM. ACAD. OF ALLERGY ASTHMA AND IMMUNOLOGY, https://www.aaaai.org/Tools-for-the-Public/Conditions-Library/Allergies/IgG-food-test (last visited June 8, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Sensitivity Test can help consumers "[l]earn [their] reactivity to 96 foods that may be causing discomfort,"[2] that its IgG Food Sensitivity Comprehensive Test can test "IgG [r]eactivity to 204 [f]oods,"[3] and that "higher than normal IgG reactivity level can mean that there's a possibility that food can be giving you symptoms," such as "headaches," "gastrointestinal distress," "bloating," "indigestion," and "stomach or abdominal pain" (the "Challenged Representations").[4]

4.    The Challenged Representations have led Plaintiffs and other reasonable consumers to erroneously believe that the Product can identify food sensitivities when it cannot. Consequently, consumers are misled into avoiding certain foods unnecessarily, potentially leading to nutritional deficiencies.

5.    The Product cannot test food sensitivities as advertised because it checks for IgG antibodies which, at most, only indicates to a consumer that they ate certain food recently. Defendant knows this, and yet still markets its Product as a "Food Sensitivity Test" which determines "reactivity" to foods. This deceives consumers into believing that this test can determine which foods a consumer will react to, i.e., Defendant's marketing deceptively indicates to consumers that the Product will identify foods they may be sensitive to, despite the fact that IgG markers do not identify sensitivities. Instead, the appropriate method to assess food sensitivity, which includes intolerance or allergy, requires a physician or allergist to review a patient's comprehensive medical history before deciding whether to administer tests for Immunoglobulin E (IgE) or Immunoglobulin A (IgA) antibodies, *not* IgG.

6.    Through a pervasive statewide and nationwide marketing scheme of false, misleading, and deceptive claims and promises, as well as omission of information material to consumers' purchasing decisions, Defendant exploits consumers' desires

___

[2] *Learn Your Reactivity to 96 Foods that May Be Causing You Discomfort*, EVERLYWELL, https://www.everlywell.com/products/food-sensitivity/ (last visited June 8, 2023).
[3] *Try Our Most Extensive Food Sensitivity Test*, EVERLYWELL, https://www.everlywell.com/products/food-sensitivity-comprehensive-test/ (last visited June 8, 2023).
[4] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

for valuable health insights, while consumers merely receive a reflection of what they consumed. Defendant realizes a financial windfall by advertising that the Product can test for food sensitivity when it cannot. Defendant has benefitted at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors over whom Defendant maintains an unfair competitive advantage.

7.      In addition to selling an ineffective Product, Defendant retains the right to sell and use private consumer data, including all information Defendant collects and extracts from the blood samples mailed by consumers. When consumers submit blood samples to test for "food sensitivities," they are entrusting Defendant with intimate, material data that could be exploited if not handled with the utmost care. Companies offering these tests, such as Defendant, often maintain comprehensive databases of customer information, including personal identifiers and biological data gleaned from blood samples.[5] This collection of sensitive data not only exposes customers to potential breaches of privacy but also raises ethical questions about the use of such information for commercial purposes without explicit, informed consent.

8.      Plaintiffs bring this class action complaint for two primary objectives. First, Plaintiffs seek injunctive relief to stop Defendant's unlawful marketing of the Product, while compelling it to clearly disclose how it collects, uses, and shares consumers' personal data. Second, Plaintiffs seek on behalf of themselves and other similarly situated consumers, a monetary recovery of the price premium consumers overpaid for the Product, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely to the extent that those causes of action permit).

---

[5] For example, companies collecting DNA samples often store their customers' DNA, and even offer this DNA to third parties, including law enforcement. *See What Ancestry DNA Taught Me About DNA, Privacy, and the Complex World of Genetic Testing*, CNET (Mar. 22, 2019), https://www.cnet.com/science/ancestrydna-taught-me-about-my-dna-privacy-and-the-complex-world-of-genetic-testing/ ("FamilyTreeDNA, another huge provider of at-home DNA kits, had given the FBI access to its database of over a million profiles. However, FamilyTree didn't notify users that their genetic information might be used this way before giving the FBI access.").

-3-

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**PARTIES**

9.     **Plaintiff Benjamin Spiro** alleges the following based on personal knowledge: (1) Plaintiff is a resident of Los Angeles, California. (2) Plaintiff purchased one IgG Food Sensitivity Comprehensive Test from Defendant's website, http://www.everlywell.com, for approximately $155.40 on or around January 1, 2022. (3) In making his purchase, Plaintiff relied on the Challenged Representations on the Product's label and website, and so he believed the Product could accurately test for food sensitivities. (4) Plaintiff did not notice any statements on Defendant's website or the Product's label that contradicted the Challenged Representations. (5) At the time of purchase, Plaintiff did not know that the Product did not actually test for food sensitivities. (6) Plaintiff would not have purchased the Product, or alternatively would not have paid a premium for it, had Defendant not made the misrepresentations and omissions set forth herein. Nor would Plaintiff have submitted his private consumer data, or alternatively would have only submitted it under limited, restricted conditions. (7) Plaintiff continues to see the Product available for sale and wants to purchase the Product again if he can be sure the Product tests for food sensitivities. (8) Plaintiff is not personally familiar with, nor does he possess any specialized knowledge, experience, or education about testing for food sensitivities, so he cannot determine if the Product functions as advertised. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that the Product actually tests for food sensitivities. (9) Plaintiff is, and continues to be, unable to rely on Defendant's representations about whether the Product can deliver accurate results about food sensitivities.

10.     **Plaintiff Leah Spiro** alleges the following based on personal knowledge: (1) Plaintiff is a resident of Los Angeles, California. (2) Plaintiff purchased one IgG Food Sensitivity Comprehensive Test from Defendant's website, http://www.everlywell.com, for approximately $155.40 on or around January 1, 2022. (3) In making her purchase, Plaintiff relied on the Challenged Representations on the

-4-

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Product's label and website, and so she believed the Product could accurately test for food sensitivities. (4) Plaintiff did not notice any statements on Defendant's website or the Product's label that contradicted the Challenged Representations. (5) At the time of purchase, Plaintiff did not know that the Product did not actually test for food sensitivities. (6) Plaintiff would not have purchased the Product, or alternatively would not have paid a premium for it, had Defendant not made the misrepresentations and omissions set forth herein. Nor would Plaintiff have submitted her private consumer data, or alternatively would have only submitted it under limited, restricted conditions. (7) Plaintiff continues to see the Product available for sale and wants to purchase the Product again if she can be sure the Product tests for food sensitivities. (8) Plaintiff is not personally familiar with, nor does she possess any specialized knowledge, experience, or education about testing for food sensitivities, so she cannot determine if the Product functions as advertised. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that the Product actually tests for food sensitivities. (9) Plaintiff is, and continues to be, unable to rely on Defendant's representations about whether the Product can deliver accurate results about food sensitivities.

11.   **Plaintiff Stephanie Rebecca Andrecs** alleges the following based on her personal knowledge: (1) Plaintiff is a resident of Santa Monica, California. (2) Plaintiff purchased one IgG Food Sensitivity Comprehensive Test from Defendant's website, http://www.everlywell.com, for $181.30 on or around March 8, 2021. (3) In making her purchase, Plaintiff relied on the Challenged Representations on the Product's label and website, and so she believed the Product could accurately test for food sensitivities. (4) Plaintiff did not notice any statements on Defendant's website or the Product's label that contradicted the Challenged Representations. (5) At the time of purchase, Plaintiff did not know that the Product did not actually test for food sensitivities. (6) Plaintiff would not have purchased the Product, or alternatively would not have paid a premium for it, had Defendant not made the misrepresentations

CLASS ACTION COMPLAINT

and omissions set forth herein. Nor would Plaintiff have submitted her private consumer data, or alternatively would have only submitted it under limited, restricted conditions. (7) Plaintiff continues to see the Product available for sale and wants to purchase the Product again if she can be sure the Product tests for food sensitivities. (8) Plaintiff is not personally familiar with, nor does she possess any specialized knowledge, experience, or education about testing for food sensitivities, and as such cannot determine if the Product functions as advertised. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that the Product actually tests for food sensitivities. (9) Plaintiff is, and continues to be, unable to rely on Defendant's representations about whether the Product can deliver accurate results about food sensitivities.

12.     **Defendant Everlywell, Inc**. is a corporation headquartered in the state of Texas where it also maintains its principal place of business. Defendant was doing business in the state of California at all relevant times, including the Class Period. Defendant is one of the owners, manufacturers, marketers, and/or distributors of the Product, and is one of the companies that created, authorized, and controlled the use of the Challenged Representations to market the Product. Defendant and its agents promoted, marketed, and sold the Product throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Product were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout the United States by Defendant and its agents to deceive and mislead consumers into purchasing the Product.

13.     Defendant also controls and manages sensitive consumer information. Among other things, Defendant collects, stores, processes, and disseminates consumer data, which it gathers through various channels such as online purchases, user account registrations, marketing opt-ins, and blood samples. Defendant exercises a high degree of control over this data, employing it not only for transactional

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

-6-

purposes but also for targeted marketing and advertising strategies. Defendant's handling of consumer information is key to its business operations and its methods of promoting and selling products.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California, and Defendant advertises and solicits business in California. Defendant has purposefully availed itself to the protections of California law and should reasonably expect to be hauled into court in California for harm arising out of its pervasive contacts with California.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. In addition, one or more Plaintiffs purchased the unlawful Product in this District, and Defendant has marketed, advertised, and sold the Product within this District using the Challenged Representations.

## FACTUAL ALLEGATIONS

### A.     Overview of "Food Sensitivity"

17.     **What is "Food Sensitivity?"** The term "food sensitivity" has no standard medical definition and is often used as an umbrella term to encompass various reactions to food, including "food allergies" and "food intolerances." "Food intolerances" are driven by the body's inability to properly digest or process certain foods, and the symptoms are generally less severe and normally limited to digestive

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

problems.[6] In contrast, "food allergies" are typically characterized by immune system responses to specific food proteins, which can trigger mild to severe or even life-threatening symptoms.[7] As explained *infra*, Plaintiffs and other reasonable consumers expected the Product labeled and advertised as a "Food Sensitivity" test to inform them of their food sensitivities, which includes food allergies and intolerances.

18.    "Food allergies" are a manifestation of the immune system's overreaction to certain food substances, which can be characterized into four types of hypersensitivity reactions. Each of these reactions involves different mechanisms, results in diverse symptoms, and is mediated by different components of the immune system. Of these, IgE-mediated reactions (e.g., the paradigmatic peanut allergy) are the most common. Only IgE, not its fellow immune antibodies IgA or IgG, which Defendant's Product measures, is a reliable indicator of food allergies.[8] IgE-mediated reactions result when an individual's immune system, upon exposure to a particular food, falsely classifies the food as harmful and starts producing IgE immune antibodies to protect against future exposure.[9]

19.    "Food intolerances"—a nonimmunologic response—is usually isolated to the gastrointestinal tract, occurring when an individual's digestive system is unable to properly break down the food.[10] Immune antibody tests, including Defendant's IgG tests, cannot detect food intolerances. Food intolerance is rarely life-threatening but can be quite uncomfortable, with the severity of discomfort depending on how much of the food is consumed. People can often eat small amounts of the food without it

---

[6] James T C Li, M.D., Ph.D., *Food allergy vs. food intolerance: What's the difference?* https://www.mayoclinic.org/diseases-conditions/food-allergy/expert-answers/food-allergy/faq-20058538 (last visited June 8, 2023).

[7] *Id.*

[8] Katheryn Birch, *Allergy Testing,* STATPEARLS (July 25, 2022), https://www.ncbi.nlm.nih.gov/books/NBK537020/.

[9] Food Allergy Research & Education (FARE), *Diagnosis of Food Allergies,* YOUTUBE (Feb. 22, 2023), https://www.youtube.com/watch?v=Yzaee2f8eXA&t=374s.

[10] *Food Intolerance vs. Food Allergy,* AM. ACAD. OF ALLERGY ASTHMA & IMMUNOLOGY (Sept. 28 2020), https://www.aaaai.org/tools-for-the-public/conditions-library/allergies/food-intolerance.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

causing problems, which is categorically untrue of a food allergy.[11] Root causes of food intolerance include enzyme deficiencies, sensitivity to food additives, or reactions to naturally occurring chemicals in foods.[12]

20.     **Reasonable Consumers' Perception of "Food Sensitivity" Testing**. As stated above, "food sensitivity" is not an official medical diagnosis. Average consumers without a medical background understand the phrase to mean an intolerance to a food, or chronic, adverse reaction to a food, such as gastrointestinal distress, rashes, migraines, inflammation, or a worsening of another underlying condition. Defendant takes advantage of this understanding held by reasonable consumers by advertising the Product as a "Food Sensitivity Test" that can determine "reactivity" to certain foods. This is false and misleading because Defendant's Product cannot determine if any given food is the actual or likely cause of any adverse reactions, such as food allergies or food intolerances. Instead, the Product merely measures the level of IgG antibodies in the blood, which are specific to the antigen (or food) that induced their production. In other words, the presence of IgG antibodies indicates that an individual's body has been exposed to a certain food and has mounted an immune response to it.

**B.     Defendant's False and Misleading Product Representations**

21.     **Challenged Representations on the Product's Label**. Defendant falsely and misleadingly labels the Product with the Challenged Representation: "[l]earn your reactivity to 96 [or 204] common foods that may be causing discomfort." This Challenged Representation is conspicuous and prominently placed on the front of the Product's packaging. The front primary display contains scant imagery and information about the Product, largely limited to the brand name (e.g., Everlywell) and type of test (e.g., Food Sensitivity Test). To draw the consumers' attention, the Challenged Representation is written directly under the type of test in clear, legible,

---

[11] *Id.*
[12] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and highly visible green font, all of which starkly contrasts from the packaging's white background. The net-effect or net-impression on consumers is that the Product will identify whether the subject has a "food sensitivity" to any of the 96 or 204 tested foods. A fair and accurate depiction of the Product's labels and packaging are depicted in the Figures below.

**Figure 1**. Food Sensitivity Test Packaging (Front).



/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Figure 2**. Food Sensitivity Test Packaging (Back).



**Figure 3**. Food Sensitivity Comprehensive Test Packaging (Front).



-11-

CLASS ACTION COMPLAINT

1    **Figure 4**. Food Sensitivity Comprehensive Test Packaging (Back).



22.    **Defendant's Marketing**. Defendant deliberately designed and executed a marketing campaign to identify the Product as a "food sensitivity test." The net impression of Defendant's label and advertising is that the Product is a "food sensitivity test" that can help consumers "[l]earn [their] reactivity to 96 [or 204] common foods that may be causing discomfort," and other symptoms. Defendant advertises its testing of "IgG reactivity to 96 [or 204] foods," emphasizing that it tests a "larger variety of foods." The Challenged Representations appear on the Product's packaging and Defendant's website, as well as Defendant's social media accounts.

23.    **Defendant's Website**. As depicted below, Defendant's website emphasizes that the Product allows consumers to "[l]earn [their] reactivity to 96 [or 204] foods that may be causing discomfort" in clear, legible, and highly visible green font. Defendant's website further claims that a "higher than normal IgG reactivity level can mean that there's a possibility that food can be giving you symptoms," such as "headaches," "gastrointestinal distress," "bloating," "indigestion," and "stomach or abdominal pain." In addition, Defendant claims the Product is "Physician

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

reviewed" and CLIA-certified (Clinical Laboratory Improvement Amendments).[13]

**Figure 5**. Product Advertising on Defendant's Website.



**Figure 6**. Product Advertising on Defendant's Website.



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

---

[13] *Learn Your Reactivity to 96 Foods that May Be Causing You Discomfort,* EVERLYWELL, https://www.everlywell.com/products/food-sensitivity/ (last visited June 8, 2023).

-13-

CLASS ACTION COMPLAINT

**Figure 7**. Defendant's Description of Food Sensitivity Test on its Website.

| | Food Sensitivity Test | Celiac Disease Screening Test ▸ | Food Allergy Test ▸ |
|---|---|---|---|
| **Measures** | Current levels of **IgG** antibodies for a variety of foods | Presence or absence of antibodies that can indicate celiac disease | **IgE** reactivity to common food allergens |
| **Intended use** | To identify foods **in your current diet** that might be connected to food sensitivity symptoms | To identify if you have an immune response to gluten, that might be connected to celiac disease | To identify antibody responses to specific foods that might be connected to a food allergy |
| **Potential symptoms** | Food sensitivities are a non-life-threatening condition with delayed symptoms such as:<br><br>• Abdominal pain<br>• Bloating<br>• Headache<br>• Indigestion | Celiac disease is an autoimmune condition with chronic symptoms such as:<br><br>• Abdominal pain, diarrhea, constipation<br>• Bloating<br>• Unexpected weight loss | Food Allergies are a potentially life threatening condition with symptoms that can develop quickly such as:<br><br>• Abdominal pain, nausea, diarrhea, constipation<br>• Hives or skin rash<br>• Runny nose, sneezing, congestion<br>• Tingling or itching |
| **Next steps** | Helps guide a two-part elimination diet | Provides results to share with your healthcare provider | Provides results to share with your healthcare provider |

**Figure 8**. Defendant's Description of Food Sensitivity Comprehensive Test on its Website.

| | Food Sensitivity Comprehensive Test | Celiac Disease Screening Test ▸ | Food Allergy Test ▸ |
|---|---|---|---|
| **Measures** | Current levels of **IgG** antibodies for a variety of foods | Presence or absence of antibodies that can indicate celiac disease | **IgE** reactivity to common food allergens |
| **Intended use** | To identify foods **in your current diet** that might be connected to food sensitivity symptoms | To identify if you have an immune response to gluten, that might be connected to celiac disease | To identify antibody responses to specific foods that might be connected to a food allergy |
| **Potential symptoms** | Food sensitivities are a non-life-threatening condition with delayed symptoms such as:<br><br>• Abdominal pain<br>• Bloating<br>• Headache<br>• Indigestion | Celiac disease is an autoimmune condition with chronic symptoms such as:<br><br>• Abdominal pain, diarrhea, constipation<br>• Bloating<br>• Unexpected weight loss | Food Allergies are a potentially life threatening condition with symptoms that can develop quickly such as:<br><br>• Abdominal pain, nausea, diarrhea, constipation<br>• Hives or skin rash<br>• Runny nose, sneezing, congestion<br>• Tingling or itching |
| **Next steps** | Helps guide a two-part elimination diet | Provides results to share with your healthcare provider | Provides results to share with your healthcare provider |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**Figure 9**. Defendant's CLIA-Certified Label on Defendant's Website.



**Figure 10**. Related Symptoms of Food Sensitivity Identified on Defendant's Website



24. **Social Media Representations**. Defendant continually uses deceptive labeling and marketing techniques to falsely portray its Product's purported abilities and benefits, taking advantage of social media platforms. For example:

    a. **Twitter**. As depicted below, Defendant regularly creates public posts, including consumer testimonials, to advertise and promote its Product on its official Twitter page as a "Food Sensitivity Test," while omitting the fact that the Product cannot detect nonimmunologic food reactivity.[14]

///

///

///

///

///

///

///

///

---

[14] *See* @Everlywell, TWITTER, https://twitter.com/everly_well (last visited June 8, 2023).

-15-

**Figure 11**. Defendant's Public Post on Twitter No. 1.



**Figure 12**. Defendant's Public Post on Twitter No. 2.



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

**Figure 13**. Customer Testimonial Posted by Defendant No. 1.

**Figure 14**. Customer Testimonial Posted by Defendant No. 2.



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

b. **Instagram.** Defendant also leverages its Instagram platform to market the Product as a "Food Sensitivity Test," conveniently omitting that its IgG tests are incapable of detecting nonimmunologic food reactivity. Defendant's Product may detect higher levels of IgG antibodies not because a consumer is allergic to that food, but rather because their immune system has built a tolerance to it due to repeated exposure (i.e., a consumer frequently eats the food). Such tolerance does not indicate an allergy, but rather indicates the body is simply exposed to that particular food.[15] Defendant's Product has no way of detecting or analyzing whether the heightened IgG levels stem from an adverse food sensitivity.

**Figure 15**. Screenshot of Defendant's Public Post on Instagram.



25. **The Product Cannot Deliver the Advertised Benefits.** Defendant's Product tests for immune antibody IgG levels, which cannot detect "food allergies" nor "food sensitivities." Defendant claims that testing for IgG levels in response to "96 [or 204] common foods" tests for "food sensitivity" by claiming that a "higher

---

[15] *See* @everlywell, INSTAGRAM, https://www.instagram.com/everlywell/ (last visited June 8, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

than normal IgG reactivity level can mean that there's a possibility that food can be giving you symptoms, such as "headaches," "gastrointestinal distress," "bloating," "indigestion," and "stomach or abdominal pain." [16] Contrary to Defendant's advertising scheme, heightened levels of IgG are not indicative of sensitivity to certain foods; instead, they merely reflect the test subject's frequently eaten foods.[17] IgE, not IgG, is the only reliable indicator of food allergies.[18] Research has shown that IgG levels actually increase as the severity of an allergy (measured by IgE levels) decreases.[19] Further, immune antibody tests, including Defendant's IgG tests, cannot detect nonimmunologic food intolerances, yet the symptoms that Defendant's Product is marketed to alleviate are commonly associated with food intolerance.

26. **The Scientific Community Has Universally Rejected IgG Testing for Food Sensitivities**. In late 2022, Defendant published a response to allegations that its advertising of the Product is deceptive in a New York Times article titled *Is Food Sensitivity a Scam?* The response is not persuasive. Defendant pointed to studies where researchers found that eliminating high-IgG foods reduces symptoms like abdominal pain and bloating, but these cited studies were small and "lacked proper control groups."[20] In actuality, both the American Academy of Allergy, Asthma & Immunology (AAAAI), which is a leading membership organization of allergists/immunologists with more than 7,000 members in the United States, Canada, and 72 other countries, and the Canadian Society of Allergy and Clinical Immunology

---

[16] *Learn Your Reactivity to 96 Foods That May be Causing You Discomfort*, EVERLYWELL, https://www.everlywell.com/products/food-sensitivity/ (last visited June 8, 2023).

[17] *Id.*

[18] Katheryn Birch, *Allergy Testing,* STATPEARLS (July 25, 2022), https://www.ncbi.nlm.nih.gov/books/NBK537020/.

[19] Vanessa Milne et al., *IgG tests promise to reveal food sensitivities. But are they science or science-ish?*, HEALTHYDEBATE (Jan. 6, 2017), https://healthydebate.ca/2017/01/topic/igg-tests-science/.

[20] Alice Callahan, *Is Food Sensitivity Testing a Scam?*, N.Y. TIMES (Sep. 21, 2022), https://www.nytimes.com/2022/09/13/well/eat/food-sensitivity-test.html.

CLASS ACTION COMPLAINT

(CSACI) have condemned IgG testing.[21] According to the AAAAI website:

> The scientific studies that are provided to support the use of this test are often out of date, in non-reputable journals and many have not even used the IgG test in question. **The presence of IgG is likely a normal response of the immune system to exposure to food. In fact, higher levels of IgG to foods may simply be associated with tolerance to those foods**.[22]

The CSACI position echoes the same sentiment, adding, "the inappropriate use of this test only increases the likelihood of false diagnoses being made, resulting in unnecessary dietary restrictions and decreased quality of life."[23] Thus, Defendant's Product cannot deliver on its label and advertising claims. Testing for IgG immune antibodies, as the Product advertises, does not accomplish the Product's stated goals, and overall cannot test for food sensitivities (whether food intolerance or allergies).

### C.     In Addition to its False and Misleading Product Claims, Defendant Also Profits from the Collection and Use of Consumers' Personal Data

27.     When consumers like Plaintiffs purchase the Product, they not only end up wasting their money on a test kit that offers no value but also do not know the extensive collection and misuse of private information.

---

[21] *See The Myth of IgG Food Panel Testing*, AM. ACAD. OF ALLERGY, ASTHMA & IMMUNOLOGY, https://www.aaaai.org/tools-for-the-public/conditions-library/allergies/igg-food-test (last visited June 8, 2023); *AAAAI support of the EAACI Position Paper on IgG4*, AM. ACAD. OF ALLERGY, ASTHMA & IMMUNOLOGY (May 2010), https://www.aaaai.org/Aaaai/media/Media-Library-PDFs/Tools%20for%20the%20Public/Conditions%20Library/Library%20-%20Allergies/eacci-igg4-2010.pdf; Stuart Carr et al., *CSACI Position statement on the testing of food-specific IgG*, 8 ALLERGY, ASTHMA, & CLINICAL IMMUNOLOGY (Jul. 26, 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3443017/.
[22] *The Myth of IgG Food Panel Testing*, AM. ACAD. OF ALLERGY, ASTHMA & IMMUNOLOGY, https://www.aaaai.org/tools-for-the-public/conditions-library/allergies/igg-food-test (last visited June 8, 2023) (emphasis added).
[23] Stuart Carr et al., *CSACI Position statement on the testing of food-specific IgG*, 8 ALLERGY, ASTHMA, & CLINICAL IMMUNOLOGY (Jul. 26, 2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3443017/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

28. Defendant gathers the following information[24]:

a. Legal name, postal address, unique personal identifier, online identifiers, Internet protocol address, signature, email address, phone number, account name or other similar identifiers;

b. Financial information – such as credit card, debit card or other payment data;

c. Commercial information – including products purchased (or even considered, but not purchased), as well as other purchasing trends/tendencies;

d. All available internet activity – including browsing history, search history, electronic network information, response to advertisements/form submissions, all available engagement data for the individual purchasers or nonpurchases/visitors of Defendant's websites;

e. Geolocation data;

f. All available professional/employment information;

g. Inferences drawn from individuals' profiles, including but not limited to consumers' preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence abilities, and aptitudes;

h. Driver's license number, citizenship status, immigration status, race, national origin, sexual orientation, sex life, precise geolocation, information concerning one's health, their genetic information;

i. Personally identifiable health information, medical information, and health records.

29. However, as fully explained below, Defendant does not apprise its customers of the vast amount of data it collects on each unsuspecting individual purchaser.

---

[24] *Privacy Notice*, EVERLYWELL, https://www.everlywell.com/privacy-policy/ (last visited June 8, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

30.     Even more troubling, Defendant shares this highly sensitive consumer data with numerous other entities – service providers, marketing and promotional partners, affiliates, Meta Platforms, external and internal clients, business partners, and many other unauthorized third party entities.

31.     Undoubtedly, Defendant also acquires tremendous data from the blood samples of consumers. Upon information and belief, this highly sensitive and valuable information may be sold by Defendant to pharmaceutical companies or other so-called "partners" to profit from consumers' private and sensitive information.

32.     Defendant does not disclose the extent of its data collection and misuse in a clear and conspicuous manner to consumers. Instead, Defendant surreptitiously hides this information, and also fails to disclose the full extent of the uses of one's personal data.

33.     **Defendant Failed to Present Its Privacy Policy in a Clear and Conspicuous Manner**. Defendant's Privacy Policy is not prominently displayed, easily accessible, or clearly visible on the main pages of its website. Instead, users are required to search extensively and navigate through multiple links to find it. This lack of visibility prevents reasonable consumers like Plaintiffs from being adequately informed about the personal information they will need to provide to Defendant to obtain the test results, and how that information will be used.

34.     When consumers purchase the Product from Defendant's website, just like Plaintiffs did, consumers are not required to click on any hyperlink or read through the Privacy Policy or Terms and Conditions as depicted further below. A purchase is made instantaneously the moment a consumer clicks "Place Order."  No additional steps are in place to prompt consumers to review and give their explicit consent to Defendant's Privacy Policy or Terms and Conditions prior to their purchase—notwithstanding the breadth of information Defendant collects and shares with its "partners" and "marketing entities."

35.     Furthermore, the available chat features on Defendant's website, and other

CLASS ACTION COMPLAINT

distractions, hinder  important pieces of information, like the link to Defendant's Privacy Policy.

36.     Following the purchase, consumers are requested to register the Product on Defendant's website to *receive* their tests results. At no point are they required to agree to or even view Defendant's Privacy Policy and Terms and Conditions. Notably, when a consumer is completing the registration process, Defendant states that the consumer is going to be subject to additional terms and conditions, viewable only by visiting a separate webpage on the website. However, at no point in this process are consumers forced to read any terms and conditions. Consumers must merely click a box indicating their assent to the terms.

37.     Moreover, Defendant uses prompts such as "Proceed to Checkout" or "Place Order" instead of any clear indication that by purchasing the Product, consumers are accepting Defendant's terms and conditions nor agreeing to Defendant's Privacy Policy. As such, at no point do consumers understand or agree to any inconspicuous terms or misuse of their personal information.

38.     It is only after they have bought the Product that consumers may discover the extent of collection and misuse of personal data. This lack of transparency leaves consumers uninformed and deceived about the full extent of their engagement with Defendant's Product and services.

39.     **Concealed Intention to Use and Sell Consumer Data**. Defendant conceals its intention to use and sell consumer data from consumers. Although Defendant asserts on its website that it is "HIPAA compliant," uses "state-of-the-art, bank-grade encryption to ensure [consumer's] data is stored securely," and "under no circumstance do we ever sell [consumer's] data," the details of its Privacy Notice— accessible only through a small, inconspicuous link at the bottom of its website— reveal multiple scenarios under which it may share consumer information with third

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

-23-

parties for business purposes.[25] Reasonable consumers would not willingly provide a for-profit company with their private medical information and other personally identifiable details, especially when that company holds the right to utilize and sell such information for unrelated commercial purposes. This is particularly true in cases like this one where a company offers no valuable medical services or information, nor any form of payment or benefit in exchange for the consumer's private information.

**Figure 16**. Defendant's Privacy Policy on its Website.[26]

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

---

[25] *Learn your reactivity to 96 foods that may be causing discomfort*, Everlywell, https://www.everlywell.com/products/food-sensitivity/ (last visited June 8, 2023).
[26] *Privacy Notice*, EVERLYWELL, https://www.everlywell.com/privacy-policy/ (last visited June 8, 2023).

CLASS ACTION COMPLAINT

| Type of Information | Sources of Information | Business or Commercial Purposes for Collection | Disclosed for a Business Purpose | Third Parties to Whom Disclosed for Business Purpose |
|---|---|---|---|---|
| Identifiers such as legal name, postal address, unique personal identifier, online identifier, Internet Protocol address, signature, email address, phone number, account name, or other similar identifiers | Direct contact with users through the Platforms, phone, email, web form and social media | As described below, e.g., to provide you with products and services and for internal purposes | Yes | Service providers, marketing and promotional partners, affiliates and other entities that provide a service directly to you |
| Financial information such as credit card number or debit card number and address or other information related to a billing or payment transaction | Direct contact with users through the Platforms, phone, email and social media; from subsidiaries and affiliates and third parties | As described below, e.g., to provide you with products, schedule an appointment, or complete transactions, and for internal purposes | Yes | Service providers and affiliates |
| Commercial information, including products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies | Platforms, cookies and other tracking technologies, third parties and affiliates such as service providers | As described below, e.g., for internal and marketing purposes | Yes | Service providers, analytics, marketing, and promotional partners |
| Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an Internet Web site, application, form submissions, email unsubscribes and subscribes, email engagement or advertisement | Platforms (websites, mobile applications, interactive features, social media networks, and other services) that link to this Notice | As described below regarding cookies, e.g., for internal purposes and for marketing purposes, as described in our **Cookie Notice**. | Yes | Service providers, analytics, marketing, and promotional partners |
| Geolocation data | Platforms; e.g. to provide nearby pharmacy or service locations | As described below regarding cookies, e.g., for internal, marketing, and other operational and business purposes | Yes | Service providers, marketing and promotional partners, third parties for operational purposes |
| Inferences drawn from any personal information collected to create a profile about a consumer reflecting the consumer's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes | Direct contact with users through the Platforms, phone, email and social media; cookies and other tracking technologies, third parties and affiliates such as service providers | As described below, in order to facilitate more targeted marketing, as well as for internal reporting and analytics purposes | Yes | Service providers, marketing and promotional partners, third parties for operational purposes |
| Professional or employment-related information | Direct contact with users through the Platforms, phone, email and social media and from service providers assisting in filling open positions | To process applications for potential employment and for internal employment and benefit purposes | Yes | Service providers; where permitted or with consent, with third parties such as future employers or pursuant to legal requestService providers, third parties for operational purposes |
| Everly or Natalist employee information, including employee identification number, identifiers and address details, contact information, employment details, job location, financial or payroll related information, other potentially sensitive personal information including National or State Identification Numbers for various employment-related purposes or background checks, and dependent information for the administration of certain employee benefits or programs | Direct contact through the Platforms, phone, email and social media with Everly or Natalist employees and any third-party employee recruitment sources | To conduct background checks and for other purposes in the ordinary course of employment (e.g., to facilitate onboarding processes, manage compensation, provide benefits, review performance, etc.) | Yes | Service providers, third parties for operational purposes |
| Sensitive personal information, including driver's license number, national or state identification number, citizenship status, immigration status, race, national origin, religious or philosophical beliefs, sexual orientation, sex life, precise geolocation, information concerning your health, and genetic information | Direct contact through the Platforms, phone, email and social media with users and Everly or Natalist employees | Internal reporting and analytics purposes, for other purposes in the ordinary course of employment, and to facilitate more targeted marketing | Yes | Service providers, analytics, marketing, and promotional partners, and third parties for operational purposes |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

40.     Moreover, Defendant's HIPAA Notice of Privacy Practices provides that Defendant may disclose consumers' protected health information ("PHI"), without requiring consumers' authorization, in numerous circumstances including but not limited to "treatment, payment and healthcare operations purposes, as such terms are defined under HIPAA, or to the extent required by law."[27]

41.     Defendant does not disclose the abovementioned privacy terms on the front or the back of the Product package. Nor does it disclose it in its social media or require third-party retailers to disclose it. Instead, Defendant prominently advertises that it is HIPAA compliant. As such, consumers are not put on notice that there are additional terms which govern the transaction, nor are they put on notice that Defendant will store consumer data for Defendant's use and sale.

42.     It is only after a consumer purchases Defendant's Product, in order to receive test results, that they may finally discover privacy terms. However, even then, consumers will not likely understand the true extent of harm and potential misuse of their data. This is intentional on the part of Defendant. Defendant will not accept or refund opened but unused kits, and so to the extent a consumer opens their kit, registers online, and then sees the privacy policy and feels uncomfortable about providing their personal data to Defendant, it will be too late. At that point, the best a consumer can do is dispose of the kit and simply lose their money on the transaction. There is no option for a consumer to get the results of their test without sending in their blood sample and accepting the terms that Defendant pushes upon them.

43.     **Inadequate Disclosure of Policies for In-Person Product Purchases.** If a consumer purchased the Product from a third-party retailer or in-person, the consumer would not have access to the aforementioned Privacy Policy and HIPAA Notice of Privacy Practices until they register the Product on Defendant's website to receive their test results—which could be days or months following the purchase.

---

[27] *HIPAA Notice of Privacy Practices*, EVERLYWELL, https://www.everlyhealth.com/hipaa-notice/ (last visited June 8, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

44.     The personal consumer data submitted by consumers to Defendant holds significant market potential. Through its misleading marketing and sale of the Product, Defendant has amassed blood samples from potentially millions of individuals. These samples can be (and are likely exploited by Defendant) for a wide array of commercial purposes. For example, these blood samples can be sold to companies for research and development purposes, to insurance companies looking to assess a person's health, or even sold to third-party marketers or advertisers who can then target a consumer with personalized advertisements related to health products, services, or treatments. The cost of acquiring a similar trove of information would be massive. While consumers may charitably donate to blood banks, it is unreasonable to expect that they would freely offer blood samples, linked to their private and identifiable information, to a profit-driven venture like Defendant.

45.     In addition to Defendant's usage of consumers' personal data to develop their own products, collection of such personal data also serves as an asset Defendant now holds which can be sold to others for profit. Such data can be sold to third parties, including government agencies, for a virtually limitless number of commercial uses. Overall, Defendant's retention of personal data is done in an exceedingly vast and overbroad manner, and no reasonable consumer is put on notice of this, and no reasonable consumer would assent to this scheme if they were made fully aware of Defendant's practices.

**D.**     **<u>Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representations into Buying the Product, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Product</u>**

46.     **Reasonable Consumer's Perception.** The Challenged Representations, combined with Defendant's pervasive marketing campaign and brand strategy, lead reasonable consumers, like Plaintiffs, into believing the Products could help them learn about their food sensitivities.

47.     **No Clear and Conspicuous Disclaimers Dispel the Deception.** Nothing on the Product's label or packaging would lead reasonable consumers to believe that the Challenged Representations are not true. That is because the Product's label and packaging do not contain a clear, unambiguous, and conspicuously displayed statement, reasonably proximate to the Challenged Representations, that reasonable consumers are likely to notice, read, and understand to mean that the Challenged Representations are indeed false.

48.     **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiffs, in deciding to buy the Product—meaning that whether the Product can deliver on advertised claims is important to consumers and motivates them to buy the Product.

49.     **Reliance.** The Class, including Plaintiffs, reasonably relied on the Challenged Representations in deciding to purchase the Product.

50.     **Falsity.** The Challenged Representations are false and deceptive because the Product cannot deliver on the advertised claim—meaning the Product is incapable of determining consumers' sensitivities to certain foods; instead, they merely reflect the test subject's frequently eaten foods. As depicted below, Defendant admitted in a public post on Twitter that the Product is not intended to "reflect food allergies, lactose intolerance, or celiac disease."[28] However, nowhere on the package or webpage does Defendant disclose that the Product may only measure a normal biological reaction or otherwise suggest to consumers that the Product is incapable of identifying food sensitivities.

///

///

///

///

///

---

[28] @Everlywell, Twitter, https://twitter.com/everly_well (last visited June 8, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

**Figure 17**. Screenshot of Defendant's Reply on Twitter.

2



3

4

5

6

7

8

9

10

11

12

13

14

15    51.    **Consumers Lack Knowledge of Falsity.** The Class, including Plaintiffs,

16   who purchased the Product, do not know, and have no reason to know, at the time of

17   purchase, that the Product's Challenged Representations are false, misleading,

18   deceptive, and unlawful—that is because the Class, including Plaintiffs, do not work

19   for Defendant and have no personal knowledge of how food sensitivity testing works.

20    52.    **Defendant's Knowledge.** Defendant knew, or should have known, that

21   the Challenged Representations were false, misleading, deceptive, and unlawful, at

22   the time that Defendant manufactured, marketed, advertised, labeled, and sold the

23   Product using the Challenged Representations to Plaintiffs and the Class.

24        a.  **Knowledge of Falsity.** Defendant is well aware that its Product is

25            worthless as it fails to deliver the promised health or educational benefit

26            and is even dangerous in that it may suggest adverse food sensitivities

27            resulting in unhealthy diet modification. Defendant has even publicly

28            recognized that the AAAAI recommends against using its Product to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

-29-

identify food sensitivities, but Defendant remains undeterred.[29]

b. **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that the Challenged Representations would lead reasonable consumers into believing that the Product is able to deliver on the advertised claims. Not only has Defendant utilized a long-standing brand strategy to advertise that the Product determines and informs consumers regarding their food sensitivities to 96 or 204 foods to help guide consumers on what types of food to prioritize, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Product can identify consumer food sensitivities to 96 or 204 foods. Thus, Defendant either knew the Challenged Representations are misleading before it marketed the Product to the Class, including Plaintiffs, or Defendant should have known about the deception had it complied with its statutory obligations.

c. **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations' materiality to consumers. First, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels or packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Product's front labels and packaging

---

[29] Shayla Love, *Food Intolerance Tests Are Shoddy Science and Traps for Disordered Eating*, VICE MAG., (Feb. 23, 2018), https://www.vice.com/en/article/43778n/food-intolerance-tests-are-shoddy-science-and-traps-for-disordered-eating.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. Second, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the constant, unwavering use of the Challenged Representations on the Product, advertisements, and throughout Defendant's marketing campaign, evidence Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Product conforms to the Challenged Representations and, ultimately, drive sales.

d. **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Product, had exclusive control over the Challenged Representations' inclusion on the Product's front labels, packaging, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Product. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representations in deciding to buy the Product, Defendant deliberately chose to market the Product with the Challenged Representations thereby misleading consumers into buying or overpaying for the Product. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiffs, into buying the Product to attain the benefits that Defendant falsely advertised and warranted.

53. **Detriment.** Plaintiffs and similarly situated consumers would not have purchased the Product, or would not have a price premium for the Product, if they had

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

-31-

known that the Challenged Representations were false and, therefore, the Product does not have the attribute claimed, promised, warranted, advertised, and/or represented. Nor would Plaintiffs have submitted their personal and private information, or alternatively would have only submitted it under limited, restricted conditions. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiffs, purchased the Product to their detriment.

### E.   The Products are Substantially Similar

54.   As described herein, Plaintiffs purchased Defendant's Food Sensitivity Comprehensive Test. The additional Product, the Food Sensitivity Test, is substantially similar to the purchased Product for the following reasons:

a. **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b. **Brand.** All Products are sold under the same brand name: Everlywell.

c. **Purpose.** All Products allegedly test and inform consumers of their food sensitivities as to certain foods.

d. **Marketing Demographics.** All Products are marketed directly to consumers for personal use. In particular, the Products are manufactured as testing kits to collect blood samples and provide results about the reactivity to certain foods.

e. **Challenged Misrepresentation.** All Products contain the same Challenged Representation ("[l]earn your reactivity to 96 [or 204] common foods that may be causing discomfort") conspicuously and prominently placed on the primary display panel of the front label, packaging and website.

f. **Packaging.** All Products are packaged in similar packaging—using similar color schemes for written content. The Products largely share the same marketing claims written on the box, including brand identity

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

(Everlywell), description ("Food Sensitivity Test"), and a few product features (e.g., the Products include the same materials within the box, and have the same logo, font, and design on the packaging).

g. **Misleading Effect.** The misleading effect of the Challenged Representation on consumers is the same for all Products—consumers over-pay a premium to test their food sensitivities but receive results reflecting only what they have been eating recently.

## F. <u>No Adequate Remedy at Law</u>

55. Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitation under the FAL and CLRA. In addition, the statutes of limitation vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Product more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Product prior to the furthest reach-back under the statutes of limitation for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Product with the Challenged Representations, across a multitude of media platforms,

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

including the Product's labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desires for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiffs and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to misrepresent the Product with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as

-34-

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's Challenged Representations are not true and providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front labels concerning the Product's true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and to prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiffs' investigation have not been completed, rendering injunctive relief even more necessary. For example, because the Court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiffs and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiffs and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class.

-35-

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

    f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

56.     **Class Definition**. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and as members of the Classes defined as follows:

> **Nationwide Class**. All residents of the United States who, within the applicable statute of limitations periods, purchased the Product, containing the Challenged Representations, for purposes other than resale; and

> **California Subclass**. All residents of California who, within four years prior to the filing of this Complaint, purchased the Product, containing the Challenged Representations, for purposes other than resale.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

("Nationwide Class" and "California Subclass," collectively, "Class").

57. **Class Definition Exclusions**. Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

58. **Reservation of Rights to Amend the Class Definition**. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

59. **Numerosity**. Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout California. Accordingly, it would be impracticable to join all members of the Class before the Court.

60. **Common Questions Predominate**. There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

    a. Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Product;

    b. Whether Defendant's conduct of advertising and selling the Product constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

    c. Whether Defendant used deceptive representations in connection with the

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

sale of the Product in violation of Civil Code section 1750, *et seq.*;

d.  Whether Defendant represented that the Product has characteristics or quantities that it does not have in violation of Civil Code section 1750, *et seq.*;

e.  Whether Defendant advertised the Product with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq.*;

f.  Whether Defendant's labeling and advertising of the Product are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.  Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.  Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.  Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.  Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.  Whether Plaintiffs and the Class paid more money for the Product than they actually received;

l.  How much more money Plaintiffs and the Class paid for the Product than they actually received;

m.  Whether Defendant's practices violated California's Confidentiality of Medical Information Act, Civil Code section 56, *et seq.*;

n.  Whether Defendant's conduct constitutes breach of warranty;

o.  Whether Defendant's conduct constitutes fraud, deceit, and/or misrepresentation;

p.  Whether Defendant's conduct constitutes a negligent misrepresentation;

-38-

q. Whether Defendant was unjustly enriched by its unlawful conduct; and

r. Whether Plaintiffs and the Class are entitled to injunctive relief.

61. **Typicality**. Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

62. **Adequacy**. Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

63. **Superiority and Substantial Benefit**. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damages and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

64. **Inconsistent Rulings**. Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

65. **Injunctive/Equitable Relief**. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

66. **Manageability**. Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**(*On Behalf of the California Subclass*)**

67. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by

-40-

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

reference all allegations contained in this complaint, as though fully set forth herein.

68.     **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs and a California Subclass who purchased the Product within the applicable statute of limitations.

69.     **The UCL.** California Business & Professions Code, sections 17200, *et seq.* prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

70.     **False Advertising Claims.** Defendant, in its advertising and packaging of the Product, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Product. Such claims and omissions appear on the label and packaging of the Product, which are sold at retail stores and online.

71.     **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Product made in Defendant's advertising and on Defendant's packaging or labeling because the Product cannot test for food sensitivities. Defendant knew and knows that the Products cannot test for food sensitivities, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Product could perform as advertised.

72.     **False Advertising Claims Cause Purchase of Product.** Defendant's labeling and advertising of the Product led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products can test for food sensitivities.

73.     **Injury in Fact.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false advertising claims—namely Plaintiffs and the California Subclass lost the purchase price for the Product they bought from Defendant.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

74.     **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."  Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

75.     **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

76.     **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue daily until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

77.     **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Product. Likewise, Plaintiffs and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

78.     **Causation/Damages.** As a direct and proximate result of Defendant's

-42-

misconduct in violation of the UCL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiffs and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### "Unfair" Prong

79.     **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

80.     **Injury.** Defendant's action of mislabeling the Product with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Product, and receive a product of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Product. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

81.     Defendant's unfair conduct also includes its widespread violation of Plaintiff's and California Class Members' rights to privacy, in the way Defendant collects information, tracks consumers' private and personal information, as well as health information.

82.     Reasonable consumers expect Defendant to comply with HIPPA

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

requirements given that Defendant handles consumers' personal information. Defendant's actions do not confer any benefit to consumers; and consumers cannot avoid these injuries – misuse of their personal data, and invasion of privacy.

83. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

84. **No Utility.** Here, Defendant's conduct has no utility and financially harms consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

85. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

86. **Unfair Conduct.** Defendant's labeling and advertising of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Similarly, Defendant's collection and misuse of consumers personal information, personal data, and health data, constitute unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

87. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

88. **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of

-44-

occasions daily.

**"Fraudulent" Prong**

89.    **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

90.    **Fraudulent & Material Challenged Representations.** Defendant included the Challenged Representations with the intent to sell the Product to consumers, including Plaintiffs and the California Subclass. The Challenged Representations are false, and Defendant knew or should have known of their falsity. The Challenged Representations are likely to deceive consumers into purchasing the Product because they are material to the average, ordinary, and reasonable consumer.

91.    **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

92.    **Reasonable and Detrimental Reliance.** Plaintiffs and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Product.

93.    **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

94.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

**"Unlawful" Prong**

95.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

96.    **Violations of CLRA and FAL.** Defendant's labeling of the Products, as

-45-

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth below in the sections regarding those causes of action.

97.   **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's conduct, tracking of consumers' data (both personal and health information, geolocation, etc.) and misuse of such vast variety of information (including sharing/disclosing such information to Meta Platforms while consumers are purchasing/browsing Defendant's website) violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, California Genetic Privacy Act, Cal. Civ. Code § 56.18-56.186, and California Consumer Records Act, Cal. Civ. Code § 1798.81.5(a)(1), HIPAA, Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, and the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.* as well as the common law.

98.   **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Product, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Similarly, Defendant's collection of private information and health information as fully discussed above, and misuse of this information, also constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

99.   **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

100.   **Business Practice.** All of the conduct alleged herein occurs and continues

-46-

to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

## COUNT TWO

### Violation of California False Advertising Law
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)
### (*On Behalf of the California Subclass*)

101. **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

102. **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Product within the applicable statute of limitations.

103. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

104. **False & Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Challenged Representations disseminated to the public through the Product's labeling, packaging and advertising. These representations were false because the Product does not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Product.

105. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

106. **Intent to sell.** Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiffs and the California Subclass, to purchase the Product.

107. **Causation/Damages.** As a direct and proximate result of Defendant's

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

-47-

misconduct in violation of the FAL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

**COUNT THREE**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq*.)**

**(*On Behalf of the California Subclass*)**

108. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

109. **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Product within the applicable statute of limitations.

110. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." Cal. Civ. Code § 1170(a).

111. **Goods/Services.** The Product is a "goods," as defined by the CLRA in California Civil Code § 1761(a).

112. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code § 1761(c).

113. **Consumers.** Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code § 1761(d).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

114.   **Transactions.** The purchase of the Product by Plaintiffs and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

115.   **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Product to Plaintiffs and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

     a.   Section 1770(a)(5) by representing that the Product has "characteristics, . . . uses [or] benefits . . . which [it] do[es] not have."

     b.   Section 1770(a)(7) by representing that the Product "[is of a particular standard, quality, or grade . . . [when it is] of another."

     c.   Section 1770(a)(9) by advertising the Product "with [the] intent not to sell [it] as advertised."

116.   **Knowledge.** Defendant's uniform and material representations and omissions regarding the Product were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

117.   **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sale of the Product.

118.   **Plaintiffs Could Not Have Avoided Injury.** Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Plaintiffs and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Product and/or would have purchased it on different terms had they known the truth.

119.   **Causation/Reliance/Materiality.** Plaintiffs and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Product. The Challenged Representations were a substantial factor. The Challenged

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  Representations were material because a reasonable consumer would consider them
2  important in deciding whether to purchase the Product.

3  120.  **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California
4  Civil Code, section 1782, more than thirty days prior to the filing of this complaint,
5  on or about April 27, 2023, Plaintiffs' counsel, acting on behalf of Plaintiffs and all
6  members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt
7  requested, addressed to Defendant at its headquarters and principal place of business.

8  121.  **Causation/Damages.**  As a direct and proximate result of Defendant's
9  misconduct in violation of the CLRA, Plaintiffs and members of the California
10  Subclass were harmed in the amount of the purchase price they paid for the Product.
11  Further, Plaintiffs and members of the Class have suffered and continue to suffer
12  economic losses and other damages including, but not limited to, the amounts paid
13  for the Products, and any interest that would have accrued on those monies, in an
14  amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for
15  violation of this Act in the form of damages, restitution, disgorgement of ill-gotten
16  gains to compensate Plaintiffs and the California Subclass for said monies.

17  122.  **Injunction.** Given that Defendant's conduct violated California Civil
18  Code section 1780, Plaintiffs and members of the California Subclass are entitled to
19  seek, and do seek, injunctive relief to put an end to Defendant's violations of the
20  CLRA and to dispel the public misperception fostered by Defendant's false
21  advertising campaign. Plaintiffs have no adequate remedy at law. Without equitable
22  relief, Defendant's unfair and deceptive practices will continue to harm Plaintiffs and
23  the California Subclass. Accordingly, Plaintiffs seek an injunction to enjoin
24  Defendant from continuing to employ the unlawful methods, acts, and practices
25  alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant to take
26  corrective action necessary to dispel the public misperception facilitated through
27  Defendant's deceptive labeling of the Product with the Challenged Representations.

28  123.  **Punitive Damages**. Defendant's unfair, fraudulent, and unlawful

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for a Product they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiffs seek an award of punitive damages against Defendant.

## **COUNT FOUR**

### **Violation of the Confidentiality of Medical Information Act**

### **(Cal. Civ. Code §§ 56, *et seq*.)**

### (***On Behalf of the California Subclass***)

124.    Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

125.    Defendant is subject to the Confidentiality of Medical Information Act (CMIA) pursuant to California Civil Code § 56.10 because it is a "provider of health care" as defined by California Civil Code § 56.05(o) in that it provides health care services and maintains medical information from consumers.

126.    Section 56.10(a) provides, in pertinent part, that "[a] provider of health

care, . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization . . . ."

127. Section 56.101 of the CMIA provides, in pertinent part, that "[a]ny provider of health care . . . who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties . . ." Cal. Civ. Code §§ 56.10, 56.101.

128. Plaintiffs' and California Subclass members' private information constitutes "medical information" under the CMIA because it consists of individually identifiable information in possession of and derived from a provider of healthcare regarding Plaintiffs' and California Subclass members' medical histories, test results, mental or physical conditions, and/or treatments.

129. Defendant violated Cal. Civ. Code § 56.10 because it failed to maintain the confidentiality of users' medical information, and instead "disclose[d] medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization" by soliciting, intercepting, and receiving Plaintiffs' and California Subclass members' private information, and sharing it with advertisers and for advertising purposes.

130. Defendant violated Cal. Civ. Code § 56.101 because it knowingly, willfully, or negligently failed to create, maintain, preserve, store, abandon, destroy, and dispose of medical information in a manner that preserved its confidentiality by soliciting, intercepting, and receiving Plaintiffs' and California Subclass members' private information, and sharing it with advertisers and for advertising purposes, and for Defendant's financial gain.

131. Defendant violated Cal Civ. Code § 56.36(b) because it negligently released or otherwise allowed access to confidential information and records concerning Plaintiffs and California Subclass members in violation of their rights under the CMIA.

132. As a direct and proximate result of Defendant's misconduct, Plaintiffs

and California Subclass members had their private communications containing information related to their sensitive and confidential private information intercepted, disclosed, and used by third parties.

133.    As a result of Defendant's unlawful conduct, Plaintiffs and the California Subclass members suffered an injury, including violation to their rights of privacy, loss of the privacy of their private information, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

134.    Plaintiffs and California Subclass members are entitled to: (a) nominal damages of $1,000 per violation; (b) actual damages, in an amount to be determined at trial; (c) reasonable attorneys' fees, and costs.

## COUNT FIVE

### Breach of Warranty

### (*On Behalf of the Class*)

135.    **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

136.    **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Product within the applicable statute of limitations.

137.    **Express Warranty.** By advertising and selling the Product at issue, Defendant made promises and affirmations of fact on the Product's packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant. Defendant purports, through the Product's labeling and advertising, to create express warranties that the Product, among other things, conforms to the Challenged Representations.

138.    **Implied Warranty of Merchantability.** By advertising and selling the Product at issue, Defendant, a merchant of goods, made promises and affirmations of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

-53-

fact that the Product is merchantable and conforms to the promises or affirmations of fact made on the Product's packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant—to wit, that the Product, among other things, conforms to the Challenged Representations.

139.   **Breach of Warranty.** Contrary to Defendant's warranties, the Product does not conform to the Challenged Representations and, therefore, Defendant breached its warranties about the Product.

140.   **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT SIX

### Unjust Enrichment/Restitution

#### (*On Behalf of the Class*)

141.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

142.   **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Product within the applicable statute of limitations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

143. **Plaintiffs/Class Conferred a Benefit.** By purchasing the Product, Plaintiffs and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Product.

144. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Product, Defendant would not generate revenue from the sales of the Product.

145. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

146. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seeks a monetary award for unjust enrichment in damages, restitution, or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT SEVEN

### Common Law Fraud, Deceit, and/or Misrepresentation

### (*On Behalf of the Class*)

147. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

148. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

-55-

Class) who purchased the Product within the applicable statute of limitations.

149. **Misrepresentation.** Defendant fraudulently and deceptively informed Plaintiffs and Class members that Defendant's Product could identify food sensitivities, while intentionally omitting material information IgG cannot test for food sensitivities as advertised.

150. **Knowledge of Falsity.** These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known or knowable to Plaintiffs, and material at the time they were made. Defendant intended to deceive consumers through its Product packaging and advertising as to its ability to identify food sensitivities, when Defendant knew its Product had no such functionality or medical/health benefit whatsoever. Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs to purchase the Product and provide personal and private consumer information. Defendant thereby allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs.

151. **Justifiable Reliance.** Plaintiffs did in fact rely on these misrepresentations and omissions and purchased the Product and provided their private consumer information to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Product, Plaintiffs' reliance on Defendant's misrepresentations was justifiable. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Product and provide personal and private consumer information. In misleading Plaintiffs, Defendant breached its duty to them, and gained financially from and as a result of this breach of duty.

152. **Causation/Damages.** As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered actual damages in that they have purchased Product that are useless, or at a minimum, worth less than the price they paid, and that they

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

would not have purchased at all had they known the truth. They have also suffered actual damages from providing to Defendant their personal and private consumer information. Accordingly, Plaintiffs seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT EIGHT

### Negligent Misrepresentation

### (*On Behalf of the Class*)

153. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

154. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Product within the applicable statute of limitations.

155. **Duty.** Defendant had a duty to Plaintiffs to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Product and acquisition of personal and private consumer information.

156. **Breach of Duty.** Defendant breached its duty to Plaintiffs by formulating, testing, manufacturing, advertising, marketing, distributing, and selling a Product that does not work as advertised and by asserting a right of ownership and control over the personal and private consumer information. Defendant knew or should have known the Product was not suitable for its intended use and was otherwise not as warranted and represented by Defendant.

157. **Injury.** As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered actual damages in that they have purchased a Product that is useless, or at a minimum, worth less than the price they paid, and that they would not have purchased the Product at all had they known the truth. They have also suffered actual damages from providing to Defendant their personal and private consumer information. Accordingly, Plaintiffs seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

    a. **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the class representatives, and appointing Plaintiffs' counsel as class counsel;

    b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

    c. **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Product; enjoining Defendant from continuing to market, advertise, distribute, and sell the Product in the unlawful manner described herein; compelling Defendant to clearly disclose, inform, and obtain affirmative consent from consumers regarding its collection, use, and sharing of consumers' personal data as described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Product resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

    d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

    e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

    f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes

-58-

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

DATED: June 8, 2023

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

By: _/s/_ Bahar Sodaify

Ryan J. Clarkson, Esq.
Bahar Sodaify, Esq.
Alan Gudino, Esq.
Ryan D. Ardi, Esq.

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT